IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONIN CAPITAL, LLC, ) | | |
| a Delaware limited liability company, ) | | |
| ) | | |
| Plaintiff, ) | Case No. 16-cv-6909 | |
| ) | | |
| v. ) | **JURY TRIAL DEMANDED** | |
| ) | | |
| CESAR ALEXANDER MAYORGA, ) | | |
| ) | | |
| Defendant. ) | | |

**RONIN CAPITAL, LLC'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR A TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER**

3833403

Plaintiff Ronin Capital, LLC ("Ronin") files this memorandum in support of its motion under Rule 65 of the Federal Rules of Civil Procedure seeking a temporary restraining order and seizure order. A proposed order is attached as Exhibit 1 to the motion.

Ronin is a proprietary trading firm that relies on technology to manage risk and efficiently and reliably trade equity, fixed income, and derivative securities. During the course of his employment with Ronin, Defendant Cesar Mayorga ("Mayorga") was entrusted with access to Ronin's entire computer network, which contains Ronin's highly-sensitive and valuable business and personal information. After he was terminated, Mayorga repeatedly accessed Ronin's network without authorization via a backdoor he seems to have set up while still a Ronin employee. In doing so, Mayorga violated the Computer Fraud and Abuse Act ("CFAA") and breached his employment agreement. Ronin seeks a seizure order to get access to Mayorga's computers before he can alter or destroy them to conceal what information he has and how he is using it. Ronin also seeks an injunction to stop Mayorga from improperly accessing its network and potentially misusing its and its employees' confidential information.

As set forth below, Ronin has a strong likelihood of success on the merits and seeks immediate injunctive relief securing the status of Ronin's confidential information and trade secrets and preventing Mayorga from further violating the CFAA and breaching his employment agreement.

## STATEMENT OF FACTS

### I. Ronin Maintains Valuable Confidential Information and Trade Secrets on Its Network

Ronin's network contains highly sensitive and valuable proprietary trading algorithms, the firm's trading positions, the corporate credit card number, employees' personnel files, tax records, social security numbers, and other valuable and sensitive information. In addition to

Ronin's protected information and that of its employees, the firm's network also includes vast personal and financial information about its CEO, John Stafford, III, and his other companies, investments, and personal accounts. Ver. Compl. ¶ 5.

## II. Mayorga Agreed to Ronin's Policies on Dealing with Valuable Confidential Information and Trade Secrets

In January 2011, Ronin hired Mayorga as a systems administrator. As part of his job duties, Mayorga administered Ronin's network operating and email systems. To enable him to perform his job duties, he had top-level access to Ronin's entire network and the ability to create additional usernames and passwords with the same unfettered administer rights and access. *Id.* ¶ 6.

As a condition of and in consideration of his employment at Ronin, Mayorga signed and agreed to be bound by the Ronin Employment Agreement, attached as Exhibit A to the Verified Complaint. Under this agreement, Mayorga was and is obligated to, among other things, comply with Ronin's procedures on dealing with confidential information, use best efforts to prevent disclosures of confidential information, and refrain from using Ronin's systems for personal use contrary to Ronin's interests. Compl. Ex. A § 7(b)(iv). Ronin's policies on dealing with confidential information include accessing Ronin's network only when authorized. They also include not duplicating, downloading, uploading, altering, destroying, taking, transmitting, delivering, sending, communicating, using, transferring, publishing, disclosing, reporting, copying, modifying, destroying, exploiting, retaining, concealing, or removing from Ronin's premises, facilities or equipment confidential information. *Id.* ¶¶ 32-34.

**III.    Mayorga Accessed Ronin's Network Containing Ronin's Valuable Confidential Information and Trade Secrets Without Authorization Prior to Termination of His Employment**

On June 29, 2016, Ronin's network group was conducting a routine audit of its virtual private network ("VPN") accounts for stale vendor and service accounts. VPN accounts are used to access Ronin's private network from a shared or public network (*e.g.*, employees accessing their Ronin work files from home) as if they were directly connected to the private Ronin network). *Id.* ¶ 10.

During the audit, Ronin discovered an account called "BESadmin" that had been periodically logging into the VPN since February 10, 2016 (shortly after Mayorga's termination), and most recently on June 1, 2016. The BESadmin account was set up to have top-level access to the Ronin network. This immediately raised red flags, because Ronin does not configure accounts with such unrestricted rights for remote access through VPN. *Id.* ¶ 11.

Examination of the VPN logs showed that Mayorga accessed the Ronin network after his termination, without authorization, and had access to Ronin's trade secret and valuable proprietary information. It also indicated that Mayorga was probably the one to enable his access, as Ronin is aware of no employee other than Mayorga who may have enabled such access. *Id.* ¶¶ 12-14.

Ronin immediately disabled the BESadmin account but does not know Mayorga's motives for accessing Ronin's network, what confidential information was taken, or whether Mayorga set up additional hidden channels to access Ronin's networks. As a result of Mayorga's actions, Ronin has already begun suffering damages in the form of expenses to further audit and remediate Ronin's IT security and to bring this lawsuit. *Id.* ¶¶ 16-17.

**ARGUMENT**

The purpose of a temporary restraining order ("TRO") is to preserve the *status quo*. *See*, *e.g.*, *Fisher v. Maram,* No. 06 C 4405, 2006 WL 2505833, at *4 (N.D. Ill. Aug. 28, 2006). Granting Ronin a TRO will maintain the *status quo* by preventing unauthorized access to Ronin's network, stopping the potential misuse of its confidential information, and preventing Mayorga from altering or destroying his computers to conceal his prior misuse of that information.

Factors to consider in deciding that Ronin is entitled to this preliminary injunctive relief include: (1) the degree of likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of harms tipping in its favor; and (4) the injunction's favorable impact on the public interest. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). Under the "sliding scale" approach, "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side." *Id.* at 12. Each of these factors strongly favors granting the requested relief.

**I.     Ronin is Likely to Succeed on the Merits of at Least One of its Claims.**

To establish the necessary "likelihood of success on the merits" element, a plaintiff must demonstrate that the chance of prevailing on at least one of its claims is "better than negligible." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). Here, Ronin more than meets this standard, as it is likely to succeed on the merits of both of its claims:

**A.     Ronin is Likely to Succeed on the Merits of its CFAA Claims**

A violation of the CFAA occurs when, among other things, any person:

(a) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information contained in a financial record of a financial institution (18 U.S.C. § 1030(a)(2)(A));

- 5 -

3833403

(b) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protection computer (18 U.S.C. § 1030(a)(2)(C));

(c) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damages without authorization, to a protected computer (18 U.S.C. § 1030(a)(5)(A));

(d) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage (18 U.S.C. § 1030(a)(5)(B)); or

(e) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss (18 U.S.C. § 1030(a)(5)(C)).

As defined in the CFAA, broker-dealers such as Ronin are included within the definition of "financial institution." 18 U.S.C. § 1030(e)(4).

The CFAA expressly provides a civil cause of action for a plaintiff "who suffers damage or loss by reason of a [CFAA] violation." 18 U.S.C. § 1030(g). *See also Farmers Ins. Exchange v. Auto Club Group*, 823 F.Supp.2d 847, 852 (N.D. Ill. 2011). Mayorga's authorization to access Ronin's computer system terminated with his employment. His acts in continuing to access Ronin's computer system thereafter constitute a clear violation of the CFAA. Section (g) therefore grants Ronin a private right of action if it can demonstrate "*either* damage or loss." *Farmers*, 823 F.Supp.2d at 852 (emphasis in original); 18 U.S.C. § 1030(g). Ronin need only show damage or loss to recover compensatory damages but here will prove both:

First, Mayorga has damaged Ronin's computer system as defined by the CFAA. "Damage" means "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Courts have interpreted this to include not only the destruction, corruption, or deletion of electronic files or the physical destruction of a hard drive, but also any "diminution in the completeness or usability of the data on a computer system." *Farmers Ins. Exchange* at 852 (citing references omitted). Mayorga repeatedly accessed Ronin's

- 6 -

3833403

computer network by way of a backdoor he seems to have set up while still a Ronin employee. Ronin is aware of no employee other than Mayorga who may have enabled such access, and the IP address from which the unauthorized user entered the Ronin computer network is the same unique, residential IP address used by Mayorga while he was still on Ronin's staff. It is also possible that Mayorga set up additional hidden channels to access Ronin's networks that have not yet been identified. His actions have thereby impaired the integrity and/or availability of Ronin's network security perimeter and/or other data, programs, systems, or information.

Second, Mayorga's actions have caused financial losses. Under the CFAA, "loss" includes "any reasonable cost to the victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(8). Here, Mayorga's breach of Ronin's computer system and network has caused the loss of costs reasonably incurred in retaining legal counsel and a computer forensics consulting firm to investigate and respond to Mayorga's misconduct, including damage and security assessments and remediation. Such costs exceed $5,000 already and, in the end, will be far greater. *See, e.g., Farmers Ins. Exchange v. Auto Club Group*, 823 F.Supp.2d 847, 854 (N.D.Ill. 2011) ("a plaintiff can satisfy the CFAA's definition of loss by alleging costs reasonably incurred in responding to an alleged CFAA offense"); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F.Supp.2d 805, 811 (N.D. Ill. 2009) ("The CFAA states that a company that pays for damage assessment may satisfy the loss requirement"); *Motorola, Inc. v. Lemko Corp.*, 609 F.Supp.2d 760, 768 (N.D. Ill. 2009) (claims of loss "related to damage and security assessments . . . are sufficient to allege loss for purposes of the CFAA"). Accordingly, Ronin is likely to succeed on its CFAA cause of

action.

### B. Ronin Is Likely to Succeed on the Merits of its Breach of Contract Claim

The Employment Agreement Mayorga signed contains the following confidentiality provisions:

> 7. **Confidentiality.**
>
>         \*      \*      \*
>
> (b) During my employment with Ronin and at all times after my employment terminates, I will:
>
>     (i) Hold all Confidential Information as a fiduciary in trust and use it only for the benefit of Ronin in properly performing my employment duties for Ronin;
>
>     (ii) Maintain Confidential Information in strict confidence and secrecy;
>
>     (iii) Not duplicate, download, upload, alter, destroy, take, transmit, deliver, send, communicate, use, transfer, publish, disclose, report, copy, modify, destroy, exploit, retain, conceal, or remove from Ronin's premises, facilities or equipment Confidential Information (including by e-mailing Confidential Information to a non-Ronin e-mail address), whether intentionally or through my negligence, except as specifically directed by Ronin in performing my employment duties for Ronin;
>
>     (iv) Comply with Ronin's procedures on dealing with Confidential Information and in all events use my best efforts to prevent the inadvertent disclosure of Confidential Information; and
>
>     (v) Immediately report to Ronin all disclosures of Confidential Information that may be improper and any possible violation of Ronin's security measures, and the details of any other person's attempts to obtain Confidential Information from me.

9. **Access to and Retrieval of Ronin Property.**

\* \* \*

(b) I agree that all electronic communication systems and all electronic communications and stored information transmitted, received, or contained in or over Ronin's servers or other information systems are the property of Ronin and are to be used for job-related purposes. This includes e-mail and other electronic communications passing over Ronin's systems and information viewed on the Internet. All such data and e-mails are Ronin's property. I will not use those systems and software for personal purposes contrary to Ronin's interests. I will not use a code, access a file or retrieve any stored communication, other than as authorized by Ronin to perform my job duties, without prior written approval from Ronin.

"Under Illinois law, post-employment confidentiality agreements have social utility in that they protect an employer from unwarranted erosion of confidential information." *Brown & Brown, Inc. v. Ali*, 592 F. Supp. 2d 1009, 1047 (N.D. Ill. 2009) (citation omitted). "[C]onfidentiality agreements are enforceable when supported by adequate consideration." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1271 (7th Cir. 1995). Mayorga signed the Employee Agreement when he was hired in January 2011, and he was compensated through 2016 in return. Ver. Compl., ¶ 31 & Ex. A. As his agreement states expressly, Mayorga's confidentiality obligations were "supported by adequate consideration." *Id.* Ex. A at 1. Thus, there is adequate consideration to support this agreement. *See, e.g., McRand, Inc. v. van Beelen*, 486 N.E.2d 1306, 1314 (Ill. App. Ct. 1985) (continued employment for two years is sufficient consideration to support an employment agreement); *see also PepsiCo*, 54 F.3d at 1272 n.10 (confidentiality agreements are valid and enforceable even when they lack durational or geographical limitations on the duty).

The confidentiality provisions here are also reasonably necessary to protect Ronin's legitimate business interests. *Tower Oil and Technology Co., Inc. v. Buckley*, 425 N.E.2d 1060,

1065 (Ill. App. Ct. 1981) (restrictive covenants "protect an employer from the unwarranted erosion of confidential information," which need not rise to the level of a trade secret to be protectable); *A.B. Dick Co. v. American Pro-Tech*, 514 N.E.2d 45, 49 (Ill. App. Ct. 1987) (confidential information accessible through employment is entitled to the legal protection of a restrictive covenant). The parties' agreement includes a straightforward requirement that Mayorga not use or disclose Ronin's confidential information. Under these circumstances, courts routinely enforce such agreements. *See, e.g., PepsiCo*, 54 F.3d at 1272 (upholding injunction on breach of confidentiality agreement claim regarding pricing information and marketing and distribution strategies); *Brown & Brown, Inc. v. Ali*, 592 F. Supp. 2d 1009, 1047 (N.D. Ill. 2009) (enforcing confidentiality agreement as reasonable given the sensitive nature of such information) (collecting cases); *Donald McElroy, Inc. v. Delaney*, 389 N.E.2d 1300, 1306 (Ill. App. Ct. 1979) (affirming preliminary injunction to enforce confidentiality agreement).

Mayorga has already breached his Employment Agreement by accessing Ronin's network without authorization. Ver. Compl. ¶¶ 11-14. On this basis alone, Ronin is likely to succeed on its contract claim. In addition, Mayorga breached his obligations to refrain from using Ronin's systems and resources for personal purposes contrary to Ronin's interests. Indeed, Mayorga's access to Ronin's systems was personal use since it was not authorized, *id.* ¶ 14, and contrary to Ronin's interests because it has caused Ronin damages, *Id.* ¶ 17.

## II. Ronin Will Suffer Irreparable Harm Without Injunctive Relief

Ronin has no adequate remedy at law and will suffer irreparable injury absent an injunction with respect to both claims for several reasons, including that a secret, once disclosed, cannot be turned back into a secret, and because it is difficult to determine with any degree of certainty the difference in revenue that Ronin's trade secrets would have generated for Ronin in the future had Mayorga not breached his contract, potentially misappropriated trade secrets, and

- 10 -

violated the CFAA, and the amount of damages Mayorga's actions have caused to Ronin's IT security perimeter and/or other data, programs, systems, or information.  Under such circumstances, the Court should protect Ronin's network and confidential information by entering the injunctive relief requested herein.  *IDS Life Ins. Co. v. SunAmerica, Inc.*, 958 F. Supp. 1258, 1281 (N.D. Ill. 1997) ("The inadequacy of legal remedies and the threat of irreparable harm are inherent in cases such as these when the destruction of customer goodwill and trade secrets are at issue"); *ISC-Bunker Ramo Corp. v. Altech, Inc*., 765 F. Supp. 1310, 1334-35, 1339 (N.D. Ill. 1990) ("irreparable injury is presumed to occur when an ex-employee breaches a confidentiality agreement"); *PepsiCo*, 996 WL 3965, at *30 ("where trade secrets and confidential information are at issue . . . a preliminary injunction is the only remedy adequate to curtail the irreparable harm that would otherwise inevitably follow").  An injunction is also needed to prevent the irreparable harm that could result if Mayorga misuses the sensitive personal information of Ronin employees, which he had access to when he illegally accessed Ronin's system.

### III.  The Balance of Hardships Weighs Strongly in Favor of Granting Ronin Injunctive Relief

The benefit of injunctive relief to Ronin far outweighs any detriment to Mayorga.  An injunction would protect Ronin's valuable confidential information and trade secrets and prevent Mayorga from concealing prior misuse of that information.

On the other hand, the damage to Mayorga from granting the temporary restraining order would be, at the most, minimal.  Ronin does not seek to retain Mayorga's computer and computer storage devices indefinitely.  They will be returned immediately after Ronin has conducted a prompt investigation as to the information Mayorga misappropriated.

Nor does Ronin seek to stop Mayorga from engaging in his livelihood. Mayorga is free to use any of his or his employer's own confidential information. All Ronin seeks is to stop Mayorga from violating his agreement not to use Ronin's confidential information for his own benefit. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cross*, No. 98 C 1435, 1998 WL 122780, at *2 (N.D. Ill. Mar. 13, 1998) ("The harm to [the plaintiff] from the defendant's use and disclosure of confidential, customer information and trade secrets clearly outweighs any harm to [the defendant] from refraining, for a very limited period of time, from contacting such customers and using [the plaintiff's] trade secrets and customer information").

### IV. The Public Interest Is Served by Enforcing Contracts and Preserving Confidential Information and Trade Secrets

An injunction would promote the public interest by requiring employees to honor their agreements. *Brown & Brown, Inc. v. Ali*, 494 F. Supp. 2d 943, 955 (N.D. Ill. 2007) ("Courts in this District have recognized that the public interest is served by enforcing valid contracts").

Mayorga has no equity on his side. He violated the CFAA, breached his employment agreement, and may have misappropriated Ronin's trade secrets and confidential information. The temporary restraining order sought here would only prohibit Mayorga from doing what he agreed not to do and put all defendants in the position they were in before Mayorga resigned from Ronin.

### CONCLUSION

For the foregoing reasons, Ronin respectfully requests that this Court issue a temporary restraining order and seizure order against Mayorga. A proposed order is attached as Exhibit 1 to Ronin's motion.

Dated:  June 30, 2016

Respectfully submitted,

RONIN CAPITAL, LLC

By: __/s/ Gary M. Miller__
    One of Its Attorneys

Gary M. Miller
Anna S. Knight
Justin R. Donoho
Gretchen D. Kaplan
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 704-7700
gmiller@shb.com
asknight@shb.com
jdonoho@shb.com

- 13 -