IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONIN CAPITAL, LLC, )
)
    Plaintiff, )
)
    v. ) Case No. 16 CV 6909
)
CESAR MAYORGA and ) Judge Charles P. Kocoras
MELISSA WOODLE, )
) Magistrate Judge Sidney I. Schenkier
    Defendants. )
)

## MEMORANDUM OPINION AND ORDER

Before us is a motion filed by plaintiff Ronin Capital, LLC ("Ronin"), requesting that we compel former Ronin employees Cesar Mayorga ("Mr. Mayorga") and Melissa Woodle ("Ms. Woodle") (collectively, "defendants") to produce certain documents and sit for depositions related to Ronin's claim that defendants unlawfully accessed Ronin's computer system and took confidential Ronin information, in violation of the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. ¶ 1030 *et. seq.*, and defendants' employment agreements and Ms. Woodle's release agreement (doc. # 51: Motion to Compel). For the following reasons, we deny plaintiff's motion.

I.

The following facts are taken from the amended verified complaint; we set them forth as background and make no determination as to their truth or falsity, other than with regard to our description of orders entered by the district court (doc. # 18: Amended Verified Complaint).[1] Mr. Mayorga and Ms. Woodle are former employees of Ronin; Mr. Mayorga most recently worked as a Senior Systems Architect and Ms. Woodle was administrative assistant to Ronin's CEO

---

[1] We cite to the amended complaint and not the answer for our summary of the facts because defendants answered the amended complaint primarily by invoking their Fifth Amendment privilege against self-incrimination (doc. ## 39, 40: Answer to Complaint).

(Amended Complaint at ¶¶ 3, 4). Ms. Woodle was terminated for alleged theft in November 2015, and Mr. Mayorga resigned two months later, in January 2016 (*Id.*). On June 29, 2016, during a routine audit of its computer network and systems, Ronin discovered that, after his resignation, Mr. Mayorga had been repeatedly – and wrongfully – accessing Ronin's computer network by way of a "back door" he set up while still a Ronin employee (Amended Complaint at ¶ 5). This "back door" allowed Mr. Mayorga to improperly view and retrieve a number of different types of Ronin's confidential, valuable and proprietary information, including, among other things, trading algorithms, trading positions, a corporate credit card number, employee personnel files, and tax records (*Id.*).

On June 30, 2016, the day after making this discovery, Ronin filed an *ex parte* verified complaint in federal court against Mr. Mayorga (doc. # 1: Verified Complaint; doc # 5: Rule 65(b)(1)(B) Certification); Ronin successfully moved *ex parte* for a temporary restraining order and a seizure order enjoining Mr. Mayorga or anyone else from using or disclosing Ronin's confidential information ("TRO & Seizure Order") (doc. # 7: order on motion for temporary restraining order). On July 1, 2016, pursuant to the TRO & Seizure Order, U.S. Marshals entered Mr. Mayorga's home and seized computer equipment belonging to him and his current employer (doc. # 10: Plaintiff's status report to court). Ronin alleges that its preliminary investigation of this equipment indicated that Mr. Mayorga downloaded a large amount of Ronin's confidential information, and that Mr. Mayorga and Ms. Woodle conspired to and actually did work together to unlawfully access, obtain, and delete confidential Ronin information (Amended Complaint at ¶ 8).[2]

---

[2] Ronin's "confidential information" (also called "misappropriated information") refers to any information covered by either the TRO or the preliminary injunction ultimately entered in this case. It includes not only information pertaining to Ronin, but also its employees and others, including two specifically named persons:

On July 12, 2016, Ronin filed an amended verified complaint, adding Ms. Woodle as a defendant (doc. # 18). On July 14, 2016, the district court entered a second Temporary Restraining Order and order for Expedited Discovery ("2nd TRO") which required defendants, among other things, to surrender any other computers, cellular phones, data storage devices and other mobile devices not previously seized by the Marshals (including passwords for locked devices), and also to return and not use any and all confidential information belonging to Ronin, its employees, or others, including materials uploaded to cloud storage accounts such as Dropbox (doc. # 28). On July 28, 2016, the district court entered an agreed order instituting a preliminary injunction enjoining defendants from accessing, using or disclosing information from Ronin's computer networks, employees' cell phones or other email accounts, or the cell phone and email accounts of Ms. Sternstein and Ms. Roti (doc. # 34: Preliminary Injunction at ¶¶ 1, 2). The preliminary injunction also required defendants to return any other confidential Ronin information in their possession, to allow plaintiffs to purge defendants' seized equipment of any Ronin information, and – without waiving defendants' Fifth Amendment privilege – to require defendants to identify anyone with whom defendants shared confidential Ronin information (*Id.* at ¶ 4).

## II.

The pending motion stems from defendants' refusal to respond to certain of plaintiff's discovery requests and requests to depose Mr. Mayorga and Ms. Woodle, on the ground that responding or being deposed would violate defendants' Fifth Amendment privilege against self-incrimination. In addition to the depositions of the two plaintiffs, Ronin requests three categories of documents that relate to several interrogatories that it served. Specifically, Ronin seeks (1) all

---

Rachel Sternstein ("Ms. Sternstein") and non-employee Katherine Roti ("Ms. Roti") (doc. # 34: Preliminary Injunction).

3

documents and communications related to the unauthorized access methods described in defendants' answer to Interrogatory No. 1, which asked Mr. Mayorga to describe all methods through which he was able to access Ronin's computer network after leaving employment at Ronin; (2) all misappropriated information described in defendants' answer to Interrogatory No. 2, which asked defendants to identify all information belonging to Ronin that defendants obtained without authorization – whether before or after their employment with Ronin terminated; and (3) all documents and communications related to the misappropriated information described in defendants' answer to Interrogatory No. 2. While Ronin does not seek to compel answers to the interrogatories, its motion does seek to compel production of the requested categories of documents.

In support of that request, Ronin explains that it has already forensically imaged defendants' electronic devices but was unable to access their personal email accounts on iPhones and iPads because of additional security features that require cooperation from defendants or a court order. Moreover, Ronin asserts that information responsive to its document requests likely exists in defendants' email accounts, because it has obtained text messages between Mr. Mayorga and Ms. Woodle that suggest the two defendants discussed and exchanged by email confidential Ronin information and communications about that information and efforts to obtain it (Pl. Mem. in Support of Mot. to Compel at 2-3).[3]

In response, defendants make two arguments: (1) the motion to compel production of additional misappropriated documents is moot, because defendants have already turned over all confidential Ronin information; and (2) requiring defendants to produce any other documents would violate their Fifth Amendment privilege against self-incrimination (doc. # 55: Defendants'

---

[3] The two text messages that Ronin cites to in support of that proposition were filed under seal, and, therefore, we will not describe their contents with particularity.

Response to Mot. to Compel at 2, 4).[4] In aid of their mootness argument, defendants state that, after Ronin asked for the emails referenced in the text messages between Mr. Mayorga and Ms. Woodle, defendants searched for, but could not find, the emails or the alleged attachments to them. Defendants contend that they searched all emails exchanged between Mr. Mayorga and Ms. Woodle during the relevant time period and produced the only two emails they found which refer to "Ronin," neither of which were the ones suggested by the text messages (Defendants' Resp. to Mot. to Compel at 3). In reply, plaintiff contends that merely searching for emails referencing the word "Ronin" is not sufficient, and asks the Court to order that defendants turn over all emails that contain any words from a list of search terms upon which the parties agree (doc. # 56: Pl. Reply in Support of Mot. to Compel at 6).

With respect to plaintiff's request to depose the two defendants, both defendants indicated that they will respond to each and every question posed to them with a refusal to answer on the ground that a response could violate their Fifth Amendment privilege against self-incrimination. As a result, defendants propose that Ronin serve them with written deposition questions pursuant to Fed. R. Civ. P. 31, to which they may answer (or plead their Fifth Amendment privilege) in writing (Def. Resp. to Mot. to Compel at 15). Ronin argues there are matters relevant to liability and damages it could properly pursue that would not implicate the Fifth Amendment privilege (Pl. Reply at 9). For its part, defendants propose that the parties meet and confer about the amount of damages plaintiff seeks for defendants' alleged actions. Defendants state that they would agree to entry of a final injunction and thus, if agreement is

---

[4] Defendants also say that the two text messages do not suggest that Mr. Mayorga and Ms. Woodle were sending documents to each other by email, and instead reveal only innocuous discussions unrelated to the allegations of misappropriation. We disagree with defendants' characterization of the text messages and agree with plaintiffs that they suggest other responsive documents may exist in other emails between defendants. Indeed, one of the text messages specifically refers to the transmission of information by email.

5

reached on the issue of damages, the case can be resolved and taking any depositions will be unnecessary (*Id.*).

### III.

The Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The protection extends to communications made in civil cases such as this, where the allegations implicate possible future prosecution for violations of criminal law. *Kastigar v. United States*, 406 U.S. 441, 454 (1972) (emphasizing the importance of protection against future prosecution based on information obtained from currently compelled testimony); *National Acceptance Co. of America v. Bathalter*, 705 F.2d 924, 926-27 (7th Cir. 1983).[5] But a compelled communication is only protected if it is "testimonial," and thus a witness may be required to produce documents containing incriminating assertions or facts if the creation of such documents was not compelled within the meaning of the privilege. *U.S. v. Hubbell*, 530 U.S. 27, 34-36 (2000). An exception to that principle applies if the act of producing documents may on its own have a compelled testimonial aspect, such as where the act of production communicates information about the document's existence, authenticity and custody. *Hubbell*, 530 U.S. at 36.

In *Hubbell*, the respondent – Webster Hubbell – was already serving time in jail for mail fraud and tax evasion related to the Independent Counsel's investigation of the Whitewater Development Corporation ("Whitewater"). As part of the plea agreement that originally put him

---

[5] The Fifth Amendment only protects a party when he or she has a reasonable fear of prosecution. *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1150 (7th Cir. 1981). It is true that defendants are not currently defendants in a criminal prosecution, and plaintiff argues against a blanket assertion of the privilege by noting that defendants cite primarily to cases involving criminal, not civil, discovery disputes. However, plaintiff does not contend that defendants have failed to establish a reasonable fear of prosecution should the government elect to pursue criminal charges against them at a future date; nor could plaintiff plausibly do so, since its allegations against defendants accuse them of violating a statute that creates both civil and criminal liability 18 U.S.C.A. § 1030(c), (g). Thus, we find that defendants have adequately demonstrated a reasonable fear of prosecution to support their claim that the Fifth Amendment must be considered in resolving this discovery dispute.

in jail, Mr. Hubbell agreed to produce to the government additional documents related to Whitewater; the Independent Counsel subsequently issued a subpoena to Mr. Hubbell seeking documents that fell into eleven broad categories, as a way to determine whether Mr. Hubbell was in fact fulfilling his promise to produce. Mr. Hubbell invoked his Fifth Amendment privilege against self-incrimination as the basis for refusing to comply with the subpoena. However, after receiving a grant of immunity, Mr. Hubbell produced more than 13,000 pages of documents pursuant to the subpoena. A grand jury later used the contents of the documents to return an indictment against Mr. Hubbell, not for violation of the plea agreement to provide additional Whitewater documents, but instead, for additional incidents of tax fraud that were unrelated to the Whitewater investigation but that were discovered in the review of the produced documents.

The Supreme Court held that the indictment must be dismissed because the act of producing the subpoenaed documents was testimonial, and thus Mr. Hubbell could not be compelled to produce them without a grant of immunity from prosecution for what they may contain. In so ruling, the Supreme Court reaffirmed the longstanding principle that a person may not use the Fifth Amendment as a bar to producing documents that he or she voluntarily prepared simply because they may contain incriminating information. *Hubbell,* 530 U.S. at 35, 36. However, the Supreme Court explained that, quite apart from the incriminating *content* of the documents, Mr. Hubbell's act of producing them in response to the subpoena contained a compelled testimonial aspect that implicated the Fifth Amendment. This was because prior to that production, the government was unaware of the location, or even the existence, of the documents Mr. Hubbell produced. The Supreme Court explained that in order to respond to the subpoena, Mr. Hubbell had to "make extensive use of 'the contents of his own mind' in identifying the hundreds of documents responsive to the subpoena." *Id.* at 43, *citing Doe v.*

*United States*, 487 U.S. 201. 210 (1988). By providing a catalogue of existing documents fitting within any of the broadly worded subpoena categories, respondent gave prosecutors a potential link in the chain of evidence needed to prosecute him. *Hubbell,* 530 U.S. at 42.

Thus, the Supreme Court made clear that it was only the testimonial aspect of compliance with the subpoena that enjoyed protection; a respondent cannot "avoid compliance with the subpoena served on him merely because the demanded documents contained incriminating evidence, whether written by others or voluntarily prepared by himself." *Hubbell*, 530 U.S. at 36. That distinction is central to the current motion.

### IV.

Before turning to the Fifth Amendment issue in connection with Ronin's document requests, we consider defendants' argument that the issue need not be addressed because it is moot. Defendants contend that they have produced the only two emails exchanged between the defendants that refer to Ronin, and argue that nothing else responsive to the document requests exists. We disagree that defendants have adequately demonstrated that their search was reasonably designed to uncover all responsive documents.

As plaintiff correctly points out, a search of the emails defendants exchanged that merely looks for a reference to "Ronin" is woefully underinclusive. Plaintiff suggests that it has knowledge that defendants obtained proprietary source code that would not be captured through a search for the word "Ronin." Moreover, we note that, of the two text messages plaintiff attaches to its memorandum, only one refers to Ronin by name, suggesting that not every responsive email defendants exchanged contained a reference to "Ronin." Finally, defendants do

8

not indicate if they searched for emails that defendants may have exchanged not just with each other, but with third parties. Therefore, we find that plaintiff's motion is not moot.[6]

V.

We now address the central issue of whether production of documents in response to plaintiff's three requests would be testimonial. Defendants say that it would be, and that compelling production thus would violate their Fifth Amendment privilege. On this issue, we conclude that defendants' argument has merit.

Under the principles explained by *Hubbell*, all three of plaintiff's document requests have the potential to compel defendant's testimony by the mere production of responsive documents. As currently framed, the requests ask defendants to produce those emails that either discuss their alleged wrongdoing, or are the product of such alleged wrongdoing, or describe the methods by which such alleged wrongdoing occurred. To do so, defendants would need to "make extensive use of 'the contents [their] own mind[s]' in identifying the . . . documents responsive to the requests." *Hubbell,* 530 U.S. at 43. Production of responsive documents would act as testimony that those documents – ones potentially acknowledging violations of the CFAA – "exist, were in their possession or control and were authentic." *Hubbell,* 530 U.S. at 37. In our view, this is the type of compelled testimony that *Hubbell* forecloses.

But, we emphasize that this conclusion is based on the fashion in which plaintiff has framed its document requests. Plaintiff can re-frame its requests in a manner that would not run afoul of *Hubbell*. As we stated above, not every compelled production of documents – even

---

[6] Defendants point out that they conducted their search while "expressly reserving their Fifth Amendment rights" (Defendants' Response to Pl. Mot. at 3). We find that defendants' search for documents referencing "Ronin," which uncovered two emails it later produced, was not a testimonial act; merely collecting documents that reference a certain word did not require defendants to "make extensive use of 'the contents of [their] own mind.'" *Hubbell*, 530 U.S. at 43.

9

those whose contents may be incriminating – is protected from disclosure because of the Fifth Amendment.

The two text messages plaintiff attached to its memorandum indicate that defendants used email to communicate about Ronin, including discussions seemingly related to their alleged unlawful activities and other issues. Although defendants contend that they have produced all emails exchanged by the defendants that refer to Ronin, as we explained above, the search defendants conducted was not inclusive enough to find all potentially relevant material. To the extent defendants attempt to shield discovery on the ground that its content may be incriminating, this argument is not availing. Rather, it is the act of defendants specifically searching for and culling out *only* those emails that discuss or encompass the unlawful misappropriation or alteration of Ronin's information that has a testimonial aspect.

Thus, requiring defendants to search anew for documents in response to a request or requests that do not require that culling process would not run afoul of the Fifth Amendment. We understand, and regret, that this may add some degree of cost and delay to the discovery process. However, we reject plaintiff's argument that using search terms to frame the requests "unduly emphasizes form over substance" (Pl.'s Reply at 4). The countervailing concern about respecting defendants' Fifth Amendment rights is not a mere formality, and counsels in favor of broadening, instead of narrowing, the document requests.

Accordingly, we order the parties to meet and confer to develop a list of search terms that are reasonably calculated to uncover whether defendants' emails contain additional relevant documents. To the extent the parties are unable to agree on search terms, the Court will resolve any disputes (with the assistance of a Special Master or court-appointed expert under Fed. R.

Civ. P. 706). Once the search terms have been determined, plaintiff may reframe its discovery requests to ask for documents identified by a search using these terms.

## VI.

Lastly, we turn to the question of plaintiff's request to depose both of the defendants. In their response brief, defendants acknowledge that the Fifth Amendment does not immunize them from the obligation to sit for depositions. However, defendants argue Ronin's goal is to elicit information that they have violated a federal criminal statute, that this will lead to broad assertions of the Fifth Amendment privilege, and that requiring them to sit for depositions therefore would not be an "efficient use of resources" (Def. Resp. to Pl. Mot. to Compel at 11-14). For its part, plaintiff agrees that defendants are entitled to refuse to answer questions that might implicate their privilege against self-incrimination. However, plaintiff argues that the Fifth Amendment does not give defendants the right to avoid sitting for deposition by threatening frequent assertions of the Fifth Amendment privilege or by suggesting a blanket assertion of privilege, which is improper. *See, Shakman v. Democratic Organization of Cook County*, 920 F.Supp.2d 881, 887 (N.D. Ill. 2013 (*Schenkier, J.*) (Fifth Amendment "does not provide *carte blanche* to refuse to answer all questions," citing *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663 (7th Cir. 2002)).

In advancing its position, plaintiff contends that its allegations against the defendants also implicate matters for which there is no risk of self-incrimination, namely, its claims that Mr. Mayorga breached his employment contract and Ms. Woodle breached both her employment contract and her release (Pl. Reply at 8). At a minimum, plaintiff's argument overstates the case.

Plaintiff's claim against Ms. Woodle for breach of her release agreement by defaming Ronin may involve conduct about which Ms. Woodle could testify without implicating Fifth

11

Amendment concerns. But, the same cannot categorically be said for plaintiff's claims against both defendants for breach of their employment agreements. In those claims, plaintiff says defendants breached the agreements to, among other things: "hold all Confidential Information as a fiduciary in trust and use it only for the benefit of Ronin in properly performing . . . employment duties for Ronin; maintain Confidential Information in strict confidence and secrecy; not duplicate, download, upload, alter, destroy, take, transmit, deliver, send, communicate, use, transfer, publish, disclose, report, copy, modify, destroy, exploit, retain, conceal or remove from Ronin's premises . . . Confidential Information . . . except as specifically directed by Ronin; and comply with Ronin's procedures on dealing with Confidential Information and immediately report to Ronin all disclosures of Confidential Information that may be improper and any possible violation of Ronin's security measures . . " (Am. Verified Compl. at ¶ 53). The conduct described as constituting a breach of defendants' employment agreements is the same conduct that plaintiff says violates the CFAA – which imposes both civil and criminal liability.

We also are mindful of defendants' offer to agree to entry of a permanent injunction. Ronin says this does not eliminate the need to depose the defendants regarding liability and damages, and it may not (Pl.'s Reply at 8-9). But, the need for a deposition of Mr. Mayorga or Ms. Woodle depends on the scope of the injunction or other relief upon which the parties might agree, and upon what plaintiff seeks on the issue of liability and damages for each defendant. Thus, while we do not say that plaintiff is barred from deposing the defendants, we conclude that more needs to be done in order for us to determine whether either deposition should go forward or on what terms.

Under these circumstances, we find merit in defendants' proposal that we require the parties to meet and confer to address these matters, as well as to address with more clarity the line of inquiry plaintiff proposes that will not implicate Fifth Amendment concerns. This conference shall take place (on more than one occasion, as may be needed) in conjunction with the parties' meet and confer concerning search terms. We order the parties to meet and confer regarding these subjects by January 20, 2017. The parties shall file a report of their meet and confer session(s) by January 27, 2017.

## **CONCLUSION**

For the above reasons, we deny plaintiff's motion to compel, but without prejudice (doc. # 51). With respect to the motion to compel as to the document requests, we reject defendants' argument that the motion is moot, but hold that defendants need not respond to the requests in their current form. The parties shall meet and confer for the purpose of developing search terms that will allow plaintiff to reframe the requests in a manner that will allow defendants to answer them without implicating their Fifth Amendment rights. With respect to the motion to compel defendants' depositions, we deny that request without prejudice, pending the parties' meet and confer session(s) that addresses the subjects for deposition as well as whether agreements can be reached that will resolve the case.

In order to afford the parties the opportunity to fully explore these matters, the status hearing with the Magistrate Judge set for January 4, 2017 (doc. # 58) is reset to February 1, 2017 at 9:00 a.m.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

DATED: **December 21, 2016**